UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANDY REACH,

                       Plaintiff,

-v-

HEALTHFIRST, INC., *et al.*,

                       Defendants.

23-CV-8085 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Mandy Reach brings this action against Defendants Healthfirst, Inc., HF Management Services, LLC, (collectively, "Healthfirst"), and Doreen Richardson, alleging discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and New York state and local law.  (*See* ECF No. 16 ("FAC") at 1-6.)  Before the Court is Healthfirst's motion to dismiss the complaint, joined by Richardson.  (*See* ECF Nos. 12 & 37.)  For the reasons that follow, the motion is granted in part.

**I.    Background**

    **A.    Factual Background**

    The following facts, taken from the First Amended Complaint, are assumed true for the purposes of this opinion.  *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

    Plaintiff Mandy Reach is a Chinese American woman who began working for Healthfirst on January 2, 2022, as a hospital specialist in the Strategic Account Management Department (the "Department").  (FAC ¶¶ 35-36.)  A position as head of that Department opened in May 2022.  (*See id.* ¶ 38.)  Reach does not allege that she applied for the specific position, but had

previously "expressed her desire to climb the corporate ladder" to Healthfirst management. (*Id.* ¶ 37.) Reach alleges that Defendant Richardson was "surreptitiously" hired for the role and began working for Healthfirst in June of 2022. (*Id.* ¶¶ 38-39.)

Soon after taking over as head of the Department, Richardson, who is Black, embarked on what Reach describes as a "racist campaign designed to get rid of [Reach]." (*Id.* ¶ 50.) Richardson consistently failed to respond to Reach's emails and spoke to her in an "aggressive, impatient[,] and hostile tone." (*Id.* ¶¶ 51-52.) At the same time, Richardson was "extremely polite and patient" when dealing with her Black subordinates, such as Reach's coworker Patsy. (*Id.* ¶ 52.) After Reach complained to Richardson that Patsy was not providing her with important client information, Richardson "blamed [Reach] for the problems," which "encouraged Patsy to express her own hostility towards [Reach]." (*Id.* ¶ 54.) Reach alleges that Patsy's behavior "was encouraged by Richardson and was racially motivated." (*Id.*) Richardson also displayed "unbridled hostility" to Reach in the form of "continual[] badgering," being "condescending to her," and "in general [acting] offensive and gratuitously mean." (*Id.* ¶ 55.) Richardson's "unnatural anger" toward Reach was never leveled on Patsy or her other Black coworkers. (*Id.*)

In addition, Richardson asked Healthfirst's account director to write a poor mid-performance review about Reach, which he declined to do. (Compl. ¶ 46.) Upon learning of Richardson's attempt to assign Reach a negative performance review, Reach filed a complaint with Healthfirst's human resources department. (*Id.* ¶ 49.) The complaint did not lead to any repercussions for Richardson. (*Id.*)

Reach fell into a depression and suffered a nervous breakdown following a particularly contentious meeting with Richardson on July 14, 2022,[1] after which Reach took medical leave from Healthfirst. (*Id.* ¶¶ 58-60.) In the meeting, Richardson accused Reach of failing to be a "team player" and being a poor communicator. (*Id.* ¶ 58.) Richardson also "belittled" Reach with "made-up accusations" and stated that she "had fired people in the past for not performing well." (*Id.*)

Reach filed a complaint with Healthfirst's human resources department on July 15, 2022, regarding the meeting. (*Id.* ¶ 59.) While still on medical leave, Reach was informed that Healthfirst would attempt to find her a job in a different department, but that Reach would need to continue working under Richardson in the meantime. (*Id.* ¶ 61.) Reach found the prospect of working under Richardson "intolerable." (*Id.*) On October 7, 2022, Reach informed Healthfirst that she was resigning. (*Id.*) In total, Reach and Richardson's interactions occurred over a roughly six-week period. (*Id.* ¶¶ 39, 59-60.)

B.  **Procedural Background**

Reach filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of the Right to Sue. (*Id.* ¶ 17.) Reach commenced this action on September 18, 2023. (ECF No. 1.) Healthfirst moved to dismiss on January 5, 2024 (ECF No. 12), which Richardson joined (ECF No. 37). Healthfirst also filed a supporting memorandum of law. (ECF No. 13 ("Mem").) Reach filed her opposition to the motion to dismiss on February 9, 2024. (*See* ECF No. 17.) Healthfirst filed a reply in further support of its motion to dismiss on March 11, 2024. (*See* ECF No. 25 ("Reply").)

---

[1] In paragraph 58, the First Amended Complaint appears to indicate incorrectly that the meeting occurred on July 14, 2023. All subsequent references are to events occurring in 2022.

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true but need not accept as true "mere conclusory statements" reciting the elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555. A complaint that pleads facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

## III. Discussion

### A. Adverse Employment Action Under Federal Law

A plaintiff claiming disparate treatment under Title VII, Section 1981, and the ADEA "must plausibly allege that she suffered an 'adverse employment action.'" *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) (Title VII); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 315-16 (2d Cir. 2015) (Section 1981); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (ADEA). Her federal retaliation claims require the same. *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023) (holding that retaliation claims brought under Title VII, Section 1981, and the ADEA all require pleading that "the employer's retaliatory actions . . . were 'materially adverse'"). The Second Circuit "define[s] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). A materially adverse change is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities,"

4

such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation marks omitted) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Examples of adverse employment actions include failure to promote, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); the maintenance of a hostile work environment, *Mohammed v. N.Y.C. Dep't of Educ.*, 932 F. Supp 2d. 420, 429 (E.D.N.Y. 2013); and constructive termination, *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019).

1. **Failure to Promote**

To succeed on a Title VII discrimination claim for failure to promote, a "plaintiff must allege that (1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The plaintiff must have applied for the position in order to state a claim for failure to promote. *See Brown*, 163 F.3d at 710 ("We read *McDonnell Douglas* and *Burdine* to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion.").

Healthfirst and Richardson argue that because Reach did not apply for the position as head of the Department, her failure to promote claim must be dismissed. (*See* Mem. at 13.) They are correct. Reach did not apply for the position as head of the Department. (*See* FAC ¶ 38.) Rather, Reach "expressed her desire to climb the corporate ladder" to Healthfirst

5

management whom she claims were "aware of [her] ambitions." (*Id.* ¶ 37.) Additionally, although Reach alleges that Healthfirst "surreptitiously" hired Richardson for the position, the allegations also establish that the job posting was not hidden from her. (*Id.* ¶ 38.); *c.f. Mauro v. S. New England Telecomm., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (exempting the plaintiff from the application requirement because the employer did not post the job opening). Because Reach knew of the job opening and did not apply, she did not suffer an adverse employment action in the form of a failure to promote.

### 2. Hostile Work Environment

Healthfirst and Richardson move to dismiss Reach's federal hostile work environment claims for failure to plead discriminatory bias or the existence of an abusive work environment. (*See* Mem. at 14-16.) Stating a claim for hostile work environment under Title VII or Section 1981 requires alleging that the "workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). To determine whether the standard has been met, courts look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23). Lastly, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Reach's hostile work environment claim is based on the following allegations: Richardson was unresponsive to Reach's emails and spoke to Reach in an aggressive, impatient, and hostile tone. (*See* FAC ¶ 52.) Richardson criticized Reach for not being a "team player,"

being a "poor communicator," and "having an 'attitude.'" (*Id.* ¶¶ 45, 56-58.) Richardson displayed "hostility" to Reach and leveled "made-up" accusations at her. (*Id.* ¶ 52.) And lastly, Richardson tried, unsuccessfully, to convince Healthfirst's account director to write a bad performance review of Reach. (*Id.* ¶ 46.) At the same time, Richardson was "extremely polite and patient" in dealing with her Black subordinates. (*Id.* ¶ 52.)

Taking Reach's factual allegations as true, the complaint does not make a plausible showing that Healthfirst was "permeated with discriminatory intimidation, ridicule, and insult" such that it "alter[ed] the conditions of [her] employment and create[d] an abusive work[] environment." *Cf. Harris*, 510 U.S. at 21 (quotation marks omitted). It is correct that, even though "the standard for establishing a hostile work environment is high," "[t]he environment need not be unendurable or intolerable." *Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Terry*, 336 F.3d at 148). However, as in *Littlejohn*, allegations that a manager made negative statements and used harsh tones, distanced themselves and was unresponsive, issued wrongful reprimands, and sought negative information on the plaintiff are insufficient to constitute a hostile work environment. *Cf. Littlejohn*, 795 F.3d at 304, 321; *see also Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x. 115, 119 (2d Cir. 2010) (summary order) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

While Richardson's alleged actions may demonstrate a difficult managerial style, they fall short of substantially altering the work environment at Healthfirst. *Compare Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (concluding that a hostile work environment existed

where the plaintiff regularly observed her supervisor watching pornographic videos, was forced to handle pornographic materials, and discovered that the manager had viewed hard core pornographic websites on her workplace computer), *with Davis–Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7586, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, were insufficient to show that defendants' conduct was severe or pervasive), *aff'd*, 488 Fed. App'x 530 (2d Cir. 2012) (summary order).

Moreover, although it is "well settled" that a single act can alter the conditions of the plaintiff's employment and create an abusive working environment if it "work[s] a transformation of the plaintiff's workplace," *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002), Reach has not alleged that any major single incident occurred. *Cf. Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (holding that to allege a hostile work environment, a plaintiff must demonstrate either that a "single incident was extraordinarily severe" or a "series of incidents that were 'sufficiently continuous and concerted' as to alter the conditions of the work environment") (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (finding a hostile work environment after plaintiff, a female firefighter, was subject to sexually explicit verbal abuse that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes); *Richardson*, 180 F.3d at 437 (holding that a single sexual assault can create an abusive work environment). Here, Reach alleges that Richardson was unresponsive, hostile, and unfairly critical of Reach's work performance. (*See* FAC ¶ 47.) No single incident Reach alleges is severe enough by itself to

render Reach's work environment "permeated with 'discriminatory intimidation, ridicule, and insult,'" sufficient to "create an abusive working environment." *Harris*, 510 U.S. at 21; *see also Fleming*, 371 Fed. App'x. 118 (finding an isolated explicitly racially motivated comment was insufficient to establish a hostile work environment); *Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 825-26 (S.D.N.Y. 2001) (finding that the victim's white supervisor allegedly displaying a noose established a hostile work environment).

Reach has also failed to allege that a "series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Cruz*, 202 F.3d at 570 (quoting *Perry*, 115 F.3d at 149). During the six-week period that she worked beneath Richardson, Reach was repeatedly spoken to in hostile tones, ignored, and criticized for her work performance and for "having an 'attitude.'" (*See* FAC ¶¶ 52, 56-58.) This series of incidents does not rise to the level of altering the conditions of Reach's employment and creating an abusive working environment. Even in hostile work environment cases involving "racist comments, slurs, and jokes," a more continuous series of incidents is required in order to be deemed pervasive. *See Hill v. Frontier Tel. of Rochester, Inc.*, No. 15 Civ. 6212, 2018 WL 1256220, at *5 (W.D.N.Y. Mar. 12, 2018) ("[T]here must be more than a few isolated incidents of racial enmity . . . . meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (cleaned up) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). Reach has not alleged any incidents of a comparable intensity or frequency. *Compare Cruz*, 202 F.3d at 571 (finding a hostile work environment where, beginning on the victim's first day of employment, "[the employer] made 'loud racial comment[s]' . . . during [the plaintiff's] daily trips to the mailroom"), *with Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 566 (S.D.N.Y. 2022) ("[T]he publication of two harmful

9

statements . . . within 24 hours of each other[,] cannot qualify as pervasive for purposes of the Title VII analysis.").

That all of Richardson's statements are tied to criticism of Reach's work performance further undercuts Reach's claims of a hostile work environment. *See Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) ("Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." (internal quotation marks omitted)); *Ramirez v. Temin & Co., Inc.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021) ("[E]xcessive criticism and rudeness do not constitute a hostile work environment.").

In sum, Reach alleges treatment that is "neither severe nor pervasive enough to 'alter the conditions of [her] employment and create an abusive working environment.'" *Sandler v. Montefiore Health Sys., Inc.*, No. 16-CV-2258, 2018 WL 4636835, at *9 (S.D.N.Y. Sept. 27, 2018) (quoting *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 238 F. Supp. 3d 375, 385 (E.D.N.Y. 2017)).

### 3. Constructive Discharge

Healthfirst and Richardson argue that Reach's constructive discharge claims must be dismissed because her work conditions were not "objectively intolerable." (*See* Mem. at 13.) To survive a motion to dismiss on a constructive discharge claim, the plaintiff must allege that she "was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016). While hostile work environment claims require the plaintiff to allege "harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment,'" a plaintiff alleging constructive discharge "must make a further showing . . . that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *See Pa.*

*State Police v. Suders*, 542 U.S. 129, 133-34 (2004) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  Constructive discharge is thus "an aggravated case of . . . hostile work environment."  *Id.* at 146.  In other words, "[w]ithout an actionable hostile work environment claim, [a] plaintiff's constructive discharge claim must also fail."  *Ferraro v. Kellwood Co.*, No. 03-CV-8492, 2004 WL 2646619, at *11 (S.D.N.Y. Nov. 18, 2004), *aff'd,* 440 F.3d 96 (2d Cir. 2006).  Therefore, because Reach has not adequately alleged a hostile work environment, her constructive discharge claim also fails.  *See Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) ("As the bar for constructive discharge claims is higher than that for hostile work environment, pleadings that fail to pass muster under the less rigorous standard must also be found inadequate under the more demanding.").

Because Reach has failed to plead the required element of an adverse employment action, her federal claims must be dismissed with prejudice.

      **B.**    **Remaining State-Law Claims**

           **1.**    **Subject-Matter Jurisdiction**

The only basis Reach pleads in the First Amended Complaint for this Court's jurisdiction over the state-law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  (FAC ¶ 15.)  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 136 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988)).  That is especially true where the case has barely progressed in federal court, as is true here.

However, Reach "claims there is diversity jurisdiction, albeit only in [her] opposition to [the] motion to dismiss."  (ECF No. 17 at 11); *Scainetti v. U.S. ex rel. Fed. Bureau of Prisons*,

11

No. 01-CV-9970, 2002 WL 31844920, at *2 (S.D.N.Y. Dec. 18, 2002).  Defendants do not challenge the allegations of diversity jurisdiction in their reply, only that the First Amended Complaint is deficient on its own.  (Reply at 14.)  But because Reach's opposition states an uncontroverted basis for 28 U.S.C. § 1332 jurisdiction—that she is a citizen of Massachusetts, all Defendants are citizens of New York, and her requested "Damages far exceed $75,000" (ECF No. 17 at 11)—"subject matter jurisdiction appears to be present."  *Scainetti*, 2002 WL 31844920, at *2 (citing *Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399-400 (1925)); *see also Curley v. Brignolo, Curley & Roberts Assocs.*, 915 F.2d 81, 85 (2d Cir. 1990) ("[A] jurisdictionally defective complaint can be regarded as satisfactorily amended if the record as a whole establishes the existence of the required diversity of citizenship between the parties." (internal quotation marks omitted)).

    2.  **Merits**

 Unlike her federal claims, Reach's allegation of a hostile work environment satisfies the less rigorous standard imposed by the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(7), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 96.  Under those laws, "a plaintiff must allege that she was treated 'less well' because of her employer's discriminatory intent."  *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011, 2022 WL 3100663, at *13 (S.D.N.Y. Aug. 4, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *see also Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 617-18 (2d Cir. 2020) (summary order); *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *17 (S.D.N.Y. Mar. 28, 2022) ("[P]laintiffs . . . under the NYSHRL faced a higher burden than those looking to do so under the NYCHRL prior to the NYSHRL's amendment in 2019. After that amendment, the standard for

NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019.").

### a. "Less Well" Treatment

To satisfy the "less well" treatment requirement, a plaintiff must "merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty.'" *Harris*, 2022 WL 3100663, at *8 (quoting *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020)); *see also Boonmalert v. City of N.Y.*, 721 F. App'x 29, 34 (2d Cir. 2018) ("[U]nder the NYCHRL, the alleged hostile conduct need not be severe or pervasive."). Reach's allegations that Richardson was unresponsive, spoke to her in a hostile tone, and leveled "made-up" accusations at her (FAC ¶¶ 52, 56-58), meet this low bar. *Cf. Harris*, 2022 WL 3100663, at *13-14 (denying motion to dismiss hostile work environment claim based on allegations that the defendant repeatedly made hostile remarks and reprimanded the plaintiff, unlike her white coworkers); *Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 280 (S.D.N.Y. 2010) (denying motion to dismiss hostile work environment claim under New York law based on allegations that the defendant "was harsh and critical, made unreasonable demands, and often raised his voice and directed profanity at" the plaintiff); *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 155 (S.D.N.Y. 2022) (denying motion to dismiss where the plaintiff alleged she was paid less than a white male comparator, provided with fewer opportunities for promotion, and not given a free parking spot).

### b. Discriminatory Intent

Reach has also adequately alleged discriminatory intent. To establish liability under the NYCHRL, a plaintiff need only allege that they were treated less well than other employees "at least in part for a discriminatory reason." *Bohlinger v. Abbott Lab'ys Inc.*, 843 F. App'x 374,

376 (2d Cir. 2021) (quotation marks omitted) (quoting *Mihalik*, 715 F.3d at 110 n.8); *Watson v. Emblem Health Servs.*, 69 N.Y.S.3d 595, 598 (2018) ("A plaintiff may prove her case if she 'proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision.'") (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012)). At the motion to dismiss stage, the plaintiff must plausibly allege "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 313.

An allegation that an employer treated plaintiff "less favorably than a similarly situated employee outside [their] protected group" is sufficient to raise the inference of discrimination at this stage. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quotation marks omitted) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010). An allegation of differential treatment must include "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," but not necessarily "that both cases are identical." *Graham*, 230 F.3d at 40.

Reach alleges that Patsy, a Black woman, held the same position and performed substantially the same duties as Reach. (FAC ¶ 52.) Reach alleges further that she never observed Richardson making any negative comments toward Patsy and that Richardson took Patsy's side when moderating a dispute between the two of them. (*Id.* ¶ 52-54.) Reach's allegation of a reasonable comparator from outside her protected group who was treated more favorably than her gives rise to an inference of discriminatory intent sufficient to survive a motion to dismiss. *Compare Bramble v. Moody's Corp.*, No. 23-506, 2024 WL 705955, at *3 (2d Cir. Feb. 21, 2024) (summary order) (holding that the plaintiff did not raise an inference of discriminatory intent where she "failed to explain how she was similarly situated to any of the

14

employees to whom she sought to compare herself—all of whom held different titles, performed different job duties, worked in different departments, or had different levels of seniority"); *Serrano v. City of N.Y.*, 208 N.Y.S.3d 603, 604 (1st Dep't 2024) ("[P]laintiffs raised an inference of animus through their allegations of differential treatment of similarly situated white officers in terms of assignments, evaluations, and placement on performance monitoring.").

Because Reach plausibly alleges she was subject to a hostile work environment caused at least in part by discriminatory intent for purposes of state and city law, her claims under the NYSHRL and the NYCHRL are sufficient to proceed past a motion to dismiss.

### c. Retaliation

Finally, Healthfirst and Richardson move to dismiss Claims 7 and 8—for retaliation under the NYSHRL and the NYCHRL—arguing that Reach fails to adequately allege a materially adverse action or engagement in protected activity. (*See* Mem. at 21-22.) Reach's state law retaliation claims require her to plead only that "she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citation omitted). "New York courts broadly interpret" that provision, *Dillon v. Ned Management, Inc.*, 85 F. Supp. 3d 639, 661 (E.D.N.Y. 2015), but the plaintiff still must allege that the retaliatory action occurred "because she has opposed any [unlawful employment practice]." *Nezaj v. PS450 Bar & Restaurant*, No. 22-CV-8494, 2024 WL 815996, at *11 (S.D.N.Y. Feb. 27, 2024) (cleaned up).

As a threshold matter, Reach alleges that she engaged in protected activity by "reporting Richardson's conduct . . . which [Reach] felt was due to Richardson's racial animus towards her," to Healthfirst's human resources department (FAC ¶ 49.). In doing so, Reach voiced

15

"'clear [] disapproval of [the defendant's alleged] discrimination,'" which qualifies as protected activity. *Mihalik*, 715 F.3d at 112 (quoting *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 479 (2011)). And as for whether Richardson's alleged actions were "reasonably likely to deter a person from engaging in such action," Healthfirst and Richardson devote only two sentences in their motion arguing otherwise. (*See* Mem. at 21.) Richardson's alleged conduct, such as displaying "unbridled hostility," "continually badgering," being "condescending," and "in general [acting] offensive and gratuitously mean" (*Id.* ¶ 55), meet this standard. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 72 (S.D.N.Y. 2020) (holding that defendant lashing out at plaintiff provided a basis for their retaliation claim); *Mihalik*, 715 F.3d at 116 (holding that defendant's comments that plaintiff "add[ed] nothing of value," has "no fucking clue what [she was] doing," and was "pretty much useless" constituted retaliation); *Lee v. Riverbay Corp.*, No. 22-CV-7504, 2024 WL 4312166, at *11 (S.D.N.Y. Sept. 27, 2024) ("[E]xclusions from meetings and emails, which followed shortly after Plaintiff's filing of an EEOC Charge, are sufficiently pleaded to move forward as a retaliation claim under the NYCHRL and post-October 2019 NYSHRL standard.").

Lastly, "[p]revailing on a retaliation claim requires satisfying causation." *Pardovani v. Miele*, No. 23-834, 2024 WL 2315339, at *2 (2d Cir. May 22, 2024) (summary order). Under the NYCHRL and NYSHRL a plaintiff need only show that her protected "activity was a motivating factor behind the defendant's retaliatory action." *Philip v. Gtech Corp.*, No. 14-CV-9261, 2016 WL 3959729, at *11 (S.D.N.Y. July 20, 2016); *see also Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013) ("Since 'the NYCHRL has been amended to abolish the parallelism between the [NYCHRL] and federal and state anti-discrimination law' . . . the Court does not apply the [] but-for causation standard to Plaintiff's NYCHRL

retaliation claim.") (quoting *Noel v. BNY-Mellon Corp.*, 514 Fed. App'x. 9, 11 (2d Cir. 2013) (summary order)). Causation may be shown by either "pleading facts to support the inference that the defendant was motivated by retaliatory animus, or by pleading a close temporal proximity between the protected activity and the retaliatory action." *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 303 (S.D.N.Y. 2022) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Reach alleges that shortly after joining Healthfirst in June, Richardson "was extremely hostile [to] and dismissive of [Reach]" and "falsely accus[ed] [Reach] of being a 'poor communicator.'" (FAC ¶ 44.) Upon learning of Richardson's attempt to assign Reach a negative performance review, Reach filed a complaint with Healthfirst's human resources department. (*Id.* ¶ 49.) After Reach filed her complaint, Richardson was unresponsive to emails and displayed "unbridled hostility" toward Reach, culminating in the July 14, 2022 meeting, in which Richardson accused Reach of failing to be a "team player," "belittled" her with "made-up accusations," and stated that she "had fired people in the past for not performing well." (*Id.* ¶¶ 51-52, 58-60.) Although Richardson's alleged hostility began before Reach complained to human resources, the temporal proximity between the filing of the complaint and the alleged escalation in Richardson's conduct—in failing to respond to emails and issuing a veiled threat of termination—are sufficient to raise a causal inference. *See Nezaj*, 2024 WL 815996, at *12 (holding that a reduction in work responsibilities and termination two months after protected activity raised an inference of causation); *Chan v. NYU Downtown Hosp.*, 03-CV-3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb 3, 2004) (finding sufficient allegation of a causal link where, soon after the alleged protected activity, the plaintiff "began to experience a lack of supervisory support").

Reach has thus adequately pleaded retaliation in violation of the NYCHRL and NYSHRL.

## IV. Conclusion

For the foregoing reasons, Defendants Healthfirst's and Richardson's motion to dismiss is GRANTED with respect to Claims 1, 2, 3, 4, and 9 and DENIED with respect to Claims 5, 6, 7, and 8. Healthfirst and Richardson are directed to file an answer to the remaining claims within fourteen days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 37.

SO ORDERED.

Dated: October 15, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge