UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANDY REACH,

                    Plaintiff,

          -v-

HEALTHFIRST, INC., *et al.*,

                    Defendants.

23-CV-8085 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Mandy Reach brings this action against Defendants Healthfirst, Inc. ("Healthfirst"), Doreen Richardson, and HF Management Services LLC ("HFMS"), alleging discrimination on the basis of race and national origin in violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law § 290, *et seq.*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq*. Pending before the Court is Defendants' motion for summary judgment on Reach's surviving claims. (ECF No. 66.) For the reasons that follow, Defendants' motion is granted.

I.    **Background**

      A.    **Factual Background**

The facts set forth here are taken from the parties' Rule 56.1 Statements and the record evidence cited in those Statements. (*See* ECF No. 70 ("Defs.' Statement"); ECF No. 82 at 1-16 ("Pl.'s Resp."); ECF No. 82 at 17-30 ("Pl.'s Counterstatement"); ECF No. 86 ("Defendants' Resp.").) These facts are undisputed except where otherwise noted.[1]

---

[1] Reach's response to Defendants' Rule 56.1 Statement contains many bare denials unaccompanied by explanations or citations to the record. (*See, e.g.*, Pl.'s Resp. ¶¶ 16, 22, 27, 30, 32-34, 37-39, 47-49, 57, 67.) However, Local Civil Rule 56.1(d) provides that "[e]ach statement by the . . . opponent under Rule 56.1(a) and (b), *including each statement denying and controverting any statement of material fact*, must be followed by citation to evidence that would

Reach is an Asian woman who was born in Hong Kong. (Defs.' Statement ¶ 2.) She is fluent in English, although she has an accent and may "say the wrong pronunciation." (*Id.* (quotation marks omitted)). Healthfirst is a not-for-profit insurer that offers low-cost health insurance, and its staff is provided by HFMS, which employed Reach. (*Id.* ¶ 1.) From January 2022 until her resignation on October 10, 2022, Reach was a hospital specialist in HFMS's Delivery Systems Engagement ("DSE") department. (*Id.* ¶ 3.) The DSE department operated as a last resort for hospitals to resolve their claims with HFMS. (*Id.* ¶ 7.)

At all relevant times, the DSE department's hospitals section was led by John Brault, who had multiple teams reporting to him. (*Id.* ¶ 10.) One of the teams was led by James Lawrence, a Black director of strategic account management, and Michaela Howard, a Black account director. (*Id.* ¶ 11.) Reach did not work under Lawrence. (*Id.*) Lawrence and Howard had two hospital specialists under them—Lisa Striano and Patsy Lalak. (*Id.*) Lalak is Guyanese, and Reach perceived her to be Black. (*Id.* ¶ 12.) Lalak, who joined HFMS in 2014, first worked as a claims examiner before leading a five-member audit team. (*Id.* ¶¶ 12-13.) From 2020 to 2024, Lalak was a hospital specialist in DSE—the same position as Reach—and she reported to Howard from 2021 to 2024. (*Id.* ¶ 14.) Striano, who is Caucasian, also joined HFMS in 2014 and was already a hospital specialist when HFMS hired Reach. (*Id.* ¶ 15.)

As a hospital specialist, Reach's duties included resolving hospitals' outstanding claims and other nonpayment issues and updating their provider rosters. (*Id.* ¶ 8.) Her role required her

---

be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d) (emphasis added). Accordingly, absent a proper denial—or a paragraph in Reach's Counterstatement of Material Facts that addresses the same fact and is accompanied by adequate citations—"Defendant[s'] material fact[s] will be deemed to be admitted for purposes of the motion under Local Civ. R. 56.1(c)." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 17-CV-855, 2021 WL 4481598, at *5 n.4 (S.D.N.Y. Sep. 30, 2021) (quotation marks omitted).

to navigate different departments within HFMS and request information from multiple people repeatedly. (*Id.* ¶ 9.) Throughout her employment, Reach reported to Account Director Jason Chen, who is also Asian. (*Id.* ¶ 5.) Like other hospital specialists, Reach felt she had a heavy workload and was backlogged, with some claims pending for years. (*Id.* ¶ 19.)

On or about June 1, 2022, HFMS hired Defendant Richardson as director of strategic account management—a role equivalent to that of Lawrence—to oversee Chen's team, which included Reach. (*Id.* ¶ 20.) Richardson is Black and from Barbados. (*Id.* ¶ 21.) Both Reach and Richardson worked remotely, except for occasional office meetings. (*Id.* ¶ 23.) The two met only twice in person and just three times by video. (*Id.* ¶ 24.)

In their initial conference, Richardson introduced herself to Chen and Reach and discussed how to improve job flow and processes to accelerate resolution of claims. (*Id.* ¶ 25.) Chen never reported any difficulty communicating with Richardson and had an "okay" working relationship with her. (*Id.* ¶ 41 (quotation marks omitted).) At the end of June 2022, Reach met with Richardson via video to discuss workflow. (*Id.* ¶ 28.) Reach claims that, after talking about people not doing their jobs, Richardson said that she "can get anybody fired" and that she "ha[s] done that before." (*Id.* (quotation marks omitted).) Richardson then asked Reach to describe her experiences in resolving issues and the barriers she encountered.[2] (*Id.* ¶ 30.) Reach provided a workflow, and Richardson responded by email, thanking Reach for the workflow but stating that what she asked for was Reach's experience in getting the issues resolved, and not the standard

---

[2] Reach purports to dispute this fact, but without any explanation or citation to the record. (Pl.'s Resp. ¶ 30.) Because Reach's response does not cite any evidence to support her position and because Reach's own deposition supports the proposition that "Richardson ask[ed] [Reach] for [her] experience in the process of getting issues resolved" (ECF No. 67-2 at 136), the Court does not treat this fact as disputed.

procedure.[3]  (*Id.* ¶ 31; ECF No. 67-2 at 137.)  On July 11, 2022, Reach sent Richardson a six-page, single-spaced narrative describing average turnaround times.  (Defs.' Statement ¶ 36.)  Chen gave Reach feedback on the document.  (ECF No. 67-2 at 140.)  Richardson thanked Reach for the document (ECF No. 67-2 at 143), but she privately spoke to Chen about how the document was not what she had asked for (ECF No. 67-7 at 270).  Both Reach and Richardson advised Chen that they were not communicating effectively.  (Defs.' Statement ¶ 40.)

Chen, who had begun looking for another job earlier in the year, gave notice of his resignation effective July 19, 2022.  (*Id.* ¶ 35.)  Richardson later hired William Tseng, another Asian man, to replace him.  (*Id.*)  After Chen submitted his resignation, Richardson asked him to write a review of Reach's performance before leaving and to include any issues he experienced with her.  (*Id.* ¶ 38; ECF No. 67-10 at 64-65.)  Chen told Reach that Richardson had instructed him to write a performance review, suggesting to Reach that Richardson may be "up to something."  (Defs.' Statement ¶ 42; Pl.'s Counterstatement ¶ 20.)  Chen did not attribute it to race and did not say why he was asked to summarize Reach's performance.  (Defs.' Statement ¶ 42.)  Reach promptly contacted Francesca Momplaisir, the DSE department's human resources business partner, and told her that Richardson asked Chen to write a negative, midyear performance review.  (*Id.* ¶ 43.)  Momplaisir promised to investigate, then called Reach back and assured her that there would be no midyear review.  (*Id.* ¶ 44.)  Around the same time, Momplaisir began conducting listening sessions with hospital specialists and others in the DSE department.  (*Id.* ¶ 34.)  This investigation followed Striano's email to Chief Executive Officer

---

[3] Reach disputes this fact on the basis that she, Striano, and Chen all concluded that she fulfilled her assignment (Pl.'s Resp. ¶ 31), but that has no bearing on whether Richardson told Reach that she asked for something different, a fact that Reach appears to concede in her deposition (ECF No. 67-2 at 137).

Pat Wang about the lack of support for hospital specialists.  (*Id.* ¶ 33; Pl.'s Counterstatement ¶¶ 9, 16.)

On either July 11 or July 12, 2022, Brault convened a strategic workflow meeting with Richardson, Lawrence, Striano, Lalak, and Reach.  (Defs.' Statement ¶ 47; ECF No. 67-2 at 124.)  At the meeting, Reach emphasized that she had a backlog.  (ECF No. 67-2 at 127.)  In response, Lalak volunteered to assist Reach.  (*Id.*)  Reach declined Lalak's offer for assistance because "she was just trying to . . . make herself look good."  (*Id.*; ECF No. 67-3 at 263.)  On July 13, 2022, Richardson discussed a work matter with Reach and seemingly got frustrated, saying that Reach was not answering her questions and was talking too fast for her to understand.  (Defs.' Statement ¶ 52.)  After the meeting, Reach emailed Momplaisir to report the interaction, saying that she felt stressed and overwhelmed but not suggesting any discrimination, racial or otherwise.  (*Id.* ¶ 53.)  On July 14, 2022, Momplaisir responded requesting time to review, and Reach advised that she was looking to apply to another team, stating that she would "not tolerate mental bullying, gas-lighting, and pushing [her] around like [she] [is] a child," and that she "cannot work in this hostile environment if it continues."  (*Id.* ¶ 54.)

Later that day, Richardson and Reach met via video and Reach secretly recorded the meeting.  (*Id.* ¶ 55.)  After Reach said that Striano was the most helpful of her colleagues, Richardson asked about Reach's refusal to work with Lalak.  (*Id.* ¶ 55.)  Reach acknowledged that Lalak had experience but said that she felt Lalak was not as responsive to her unless she escalated the issue to Chen.  (*Id.* ¶ 56; Pl.'s Counterstatement ¶ 29.)  After confirming that Reach refused Lalak's help, Richardson stated that, "to make the declaration that you're not going [to] work with a member of your team because they were not helpful in the past um, is very unprofessional."  (Defs.' Statement ¶ 59.)  Reach responded that she would be professional and

work with Lalak if she had to. (*Id.* ¶ 60.) Richardson then suggested training programs that the organization offers on professional communication and working with others, telling Reach that the attitude that she perceived from her was "very combative," "really intense[,] and highly emotional," even if Reach did not mean to be rude or disrespectful. (*Id.* ¶ 61.) Richardson offered to help find programs about communicating professionally and managing conflict, stating that she feels Reach gets "so emotional about the situation that [she] cannot hear what the other person is saying." (*Id.* ¶ 62.) Reach pushed back, and Richardson stated that she felt that Reach refuses to take a different perspective and instead "simply restate[s] what [she's] already said," which is "basically dismissing" the other person in the conversation. (ECF No. 67-12 at 27-28.) Reach told Richardson, "Well, I've been very frank with you," but agreed to go to human resources. (Defs.' Statement ¶ 64.) The meeting ended with Richardson promising to research and recommend training sessions. (*Id.*)

The next day, Reach emailed Momplaisir the recording of her meeting with Richardson and accused Richardson of repeatedly badgering and belittling her by asking questions she thought she answered. (*Id.* ¶¶ 65-66.) Reach did not say that she thought she was being treated differently because she is Asian. (*Id.* ¶ 66.) Momplaisir suggested that Reach take paid time off, which she did immediately. (*Id.* ¶ 68.) Reach took paid time off from July 15, 2022 to July 22, 2022, and then short-term disability leave until October 7, 2022. (*Id.* ¶ 69.) After July 15, 2022, Reach did not communicate with anyone at HFMS except for human resources. (*Id.* ¶ 70.) On July 19, 2022, Reach asked if she could transfer off of Richardson's team and Momplaisir said yes. (*Id.* ¶ 71.) When Reach told Momplaisir that she would be taking short-term disability leave, Momplaisir responded that she would look for other positions for Reach within HFMS. (*Id.* ¶ 72.) HFMS then granted Reach's request to extend her short-term leave to December 5,

2022. (*Id.* ¶ 73.) On October 10, 2022, Reach resigned and started a new job. (*Id.* ¶ 74.) After her resignation, Reach told HFMS for the first time—during an interview with human resources—that she felt she was a victim of race or national origin discrimination and targeted for firing because of her gender and ethnicity. (*Id.* ¶ 75.) Richardson hired Anthony Walters, a Black man, in September 2022. (Pl.'s Counterstatement ¶¶ 7, 42.)

### B.    Procedural Background

Reach commenced this action on September 12, 2023. (ECF No. 1.) Her complaint asserted claims under federal law, the NYSHRL, and the NYCHRL. (*See generally* ECF No. 16.) On October 15, 2024, the Court granted Defendants' motion to dismiss as to Reach's federal law claims and denied the motion to dismiss as to Reach's state-law claims for hostile work environment and retaliation. (*See generally* ECF No. 40.)

Fact discovery concluded on May 30, 2025. (*See* ECF No. 62.) Defendants filed the present motion for summary judgment on October 28, 2025 (ECF No. 66), alongside an accompanying memorandum of law (ECF No. 69 ("Mem.")) and a Rule 56.1 Statement (Defs.' Statement). Reach filed an opposition on December 16, 2025 (ECF No. 84 ("Opp.")), alongside a counterstatement to Defendants' Rule 56.1 Statement (Pl.'s Resp.; Pl.'s Counterstatement). Defendants filed a reply on January 12, 2026. (ECF No. 85 ("Reply").)

## II.    Legal Standard

Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party." *Jackson v. Am. C.L. Union, Inc.*, No. 21-CV-5037, 2024 WL 4766983, at *6 (S.D.N.Y. Nov. 13,

2024) (citing *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).  "In considering a summary judgment motion, the Court 'is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party.'"  *Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 393 (E.D.N.Y. 2026) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008)).

"The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact."  *Id.* (quotation marks omitted).  "Once such a showing has been made, the non-moving party must present specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  In cases that involve claims of discrimination or retaliation, courts must use "an extra measure of caution" in deciding whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotation marks and citation omitted).  "Nonetheless, 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.'"  *Jackson*, 2024 WL 4766983, at *6 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  "Thus, even in a discrimination case, 'a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment,' and may not rely solely upon 'their own self-serving testimony.'"  *Id.* (first quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), and then quoting *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (summary order)).

### III.   Discussion

Of the claims asserted in Reach's Amended Complaint, only the following remain after the Court's resolution of Defendants' motion to dismiss: discrimination and hostile work environment under the NYSHRL (ECF No. 16 ¶¶ 102-11); discrimination and hostile work environment under the NYCHRL (*id.* ¶¶ 112-21); retaliation under the NYSHRL (*id.* ¶¶ 122-26); and retaliation under the NYCHRL (*id.* ¶¶ 127-31).

### A.   Discrimination and Hostile Work Environment

#### 1.   Legal Standard

"The NYSHRL and the NYCHRL prohibit discrimination in employment on the basis of race." *Blackman v. Metro. Transit Auth.*, 206 A.D.3d 602, 603 (2d Dep't 2022); *see also* N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107(1)(a). "In August 2019, New York amended the NYSHRL to direct courts to construe the NYSHRL, like the NYCHRL, liberally for the accomplishment of the remedial purposes thereof[.]" *Allen v. City of New York*, No. 19-CV-3786, 2024 WL 3965697, at *8 n.3 (S.D.N.Y. Aug. 28, 2024) (cleaned up), *aff'd*, No. 24-2589-CV, 2025 WL 3152723 (2d Cir. Nov. 12, 2025). Accordingly, courts treat discrimination claims under the post-amendment NYSHRL the same as it treats those claims under the NYCHRL. *See, e.g.*, *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 22-CV-8139, 2024 WL 1251177, at *7 (S.D.N.Y. Mar. 22, 2024), *aff'd*, No. 24-1085-CV, 2025 WL 704278 (2d Cir. Mar. 5, 2025); *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-8716, 2025 WL 1898927, at *11 (S.D.N.Y. July 9, 2025). Additionally, because "there are not separate standards for 'discrimination' and 'harassment' claims" under the NYCHRL, the Court applies the same lenient pleading standard to both Reach's discrimination and hostile work environment claims. *Clarke v. InterContinental Hotels Grp., PLC*, No. 12-CV-2671, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013); *see also Rothbein v. City of New York*, No. 18-CV-5106, 2019 WL 977878, at *9 n.12 (S.D.N.Y.

Feb. 28, 2019) ("Under the NYCHRL, . . . there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination: the former is subsumed into the latter[.]").

"NYSHRL and NYCHRL claims are both analyzed using the three-step burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Uttarwar*, No. 24-1085, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025) (summary order). "This framework first requires a plaintiff to establish a prima facie case of discrimination, which represents a minimal burden in employment discrimination cases." *Id.* (cleaned up). To establish a prima facie discrimination claim under the NYCHRL and the post-amendment NYSHRL, a plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for her position; (3) "she was treated differently from others in a way that was more than trivial, insubstantial, or petty"; and (4) the circumstances give rise to an inference of discrimination. *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021) (quotation marks omitted). "Courts evaluating the sufficiency of evidence on a motion for summary judgment must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Kurtanidze*, 2025 WL 1898927, at *12 (quotation marks omitted). "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Id.* (cleaned up).

"Summary judgment dismissing a claim under the NYCHRL [and post-amendment NYSHRL] should be granted only if no jury could find the defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." *Bilitch v. New York City Health & Hosps. Corp.*, 194 A.D.3d 999, 1002 (2d Dep't

2021) (cleaned up). That said, "district courts must be mindful that the NYCHRL [and post-amendment NYSHRL] [are] not a general civility code." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quotation marks omitted). Plaintiffs must establish "a discriminatory motive" for any challenged conduct. *Id.* "While claims under the NYCHRL [and NYSHRL] are more liberally construed than claims under Title VII," neither statute "alter[s] the kind, quality, or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Conahan v. MedQuest Ltd.*, No. 20-CV-1325, 2022 WL 16748585, at *6 (S.D.N.Y. Nov. 7, 2022) (cleaned up).

### 2.    Analysis

There is no dispute that Reach is a member of a protected class as an Asian woman from Hong Kong, and Defendants do not argue that Reach was unqualified for her position. However, Reach has failed to satisfy her prima facie burden to show that "she was treated differently from others in a way that was more than trivial, insubstantial, or petty" under circumstances that give rise to an inference of discrimination. *Maynard*, 2021 WL 396700, at *5 (quotation marks omitted).

As a threshold matter, Reach has failed to show that any of the challenged conduct went beyond trivial, insubstantial, or petty actions. "At the outset, the complaint did not allege that any of plaintiff's colleagues or supervisors made any explicitly or implicitly invidious comments about her race, religion, or country of origin." *Etienne v. MTA N.Y.C. Transit Auth.*, 223 A.D.3d 612, 613 (1st Dep't 2024).[4] Reach was not fired, demoted, or constructively discharged, nor was

---

[4] Plaintiff's Counterstatement of Material Facts asserts that Richardson stated that she did not understand Reach because Reach is Asian and Chinese. (Pl.'s Counterstatement ¶ 23.) But the only citation provided—to Reach's deposition—does not support the allegation that Richardson said she could not understand Reach because Reach is Asian. Instead, the Counterstatement quotes Reach's testimony about her own conversation with her daughter, during which she told her daughter that Richardson didn't understand her because she is Asian. (ECF No. 78-1 at 11-

she stripped of any duties or assigned excessive duties.  *Cf. Villar v. City of New York*, 135 F.

Supp. 3d 105, 134 (S.D.N.Y. 2015).  Instead, the record shows that Richardson told Reach that

two documents Reach prepared were not what she had asked for; that Richardson asked Reach's

supervisor to prepare a performance review of Reach, including any issues he had with her,

before he left his job; and that Richardson had conversations with Reach about communicating

more professionally.  Richardson may have been outwardly displeased with Reach in the course

of these interactions and may have spoken with her harshly, but excessive criticism and

disapproving facial expressions amount to only "petty slights[,] trivial inconveniences, and mere

personality conflicts," which are inactionable under the NYCHRL and NYSHRL.  *Marseille v.*

*Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981, at *2 (2d Cir. Oct. 26, 2022) (summary

order) (quotation marks omitted); *see also Dressler v. New York City Dep't of Educ.*, No. 10-CV-

3769, 2012 WL 1038600, at *10 (S.D.N.Y. Mar. 29, 2012) (dismissing NYCHRL claims based

on "harsh criticism" and "increased scrutiny").

Even assuming that the challenged conduct in this case is potentially actionable under the

NYCHRL and NYSHRL, Reach's discrimination and hostile work environment claims still fail

because Reach has failed to adduce evidence of discrimination.  "For the purposes of [the]

NYCHRL [and NYSHRL], a discriminatory motive can be shown either by pleading direct

evidence of discrimination, including comments indicating prejudice on account of a protected

characteristic, or by pleading facts showing that comparators were treated better than the plaintiff

---

12.) Hearsay statements speculating about Richardson's state of mind are not admissible evidence for purposes of summary judgment. *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("[I]nadmissible hearsay [is] an insufficient basis for opposing a motion for summary judgment.").

was." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (quotation marks omitted).

As to direct evidence of discrimination, nothing in the record indicates that Richardson ever "critici[zed] the plaintiff's performance in ethnically degrading terms," or made "invidious comments about others in [Reach's] protected group." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quotation marks omitted). Nonetheless, Reach argues that "Richardson's directive to Chen to write a negative report about [Reach], an employee [Richardson] did not know, other than [the fact that Reach] was Chinese, is a clear act of discrimination." (Opp. at 16-17.)

Even if Richardson instructed Chen to write a negative performance review of Reach (Pl.'s Counterstatement ¶ 20), that still does not provide evidence of discrimination on the basis of race or national origin. Contrary to Reach's contentions, Richardson knew more about Reach than her race when she asked for the performance review. Richardson also knew Reach's job responsibilities and was tasked with resolving backlogs in the work of Reach's team.[5] (Defs.' Statement ¶¶ 7-8, 27.) Richardson further knew that Chen was Reach's direct supervisor and that he was about to leave (Defs.' Statement ¶¶ 5, 35), that Richardson already had experienced two instances of miscommunication with Reach (*id.* ¶¶ 30, 37), and that Reach had refused Lalak's help despite admitting that she was behind (*id.* ¶ 47).[6] Indeed, Chen's deposition reveals that both Reach and Richardson privately expressed frustration to him about their inability to communicate. (ECF No. 78-2 at 76-77.) It may well be that Richardson was not clear in

---

[5] Reach denies Richardson's responsibilities in conclusory fashion with no supporting citation to the record. (Pl.'s Resp. ¶ 27.) The Court therefore treats the fact as admitted.

[6] For the reasons discussed *supra*, the Court treats these facts as undisputed, notwithstanding Reach's conclusory denial. (*See* Pl.'s Resp. ¶¶ 30, 37.)

communicating her requests, that she was unreasonably unhappy with Reach's work product, or that she could have presented her feedback more constructively.  But "[i]t is not enough that a plaintiff has an overbearing or obnoxious boss.  She must show that she has been treated less well at least in part *because of* her [race]."  *Mihalik*, 715 F.3d at 110 (quotation marks omitted).  And no evidence in the record suggests that Richardson had animosity toward Reach based on her race, as evidenced by the fact that Chen, an Asian man, reported no issues with Richardson and did not believe that her dissatisfaction with Reach was motivated by racial animus.  (*See* ECF No. 67-10 at 87-88, 92.)  Indeed, Richardson hired another Asian man, Tseng, to replace Chen.  (Defs.' Statement ¶ 35.)

Reach relies on her own belief that Richardson was acting discriminatorily.  (*See, e.g.*, Pl.'s Counterstatement ¶¶ 26-27 (stating that "Richardson repeatedly called Plaintiff a 'bad communicator' and having 'no interpersonal skills,' *tied by Plaintiff* to her being Asian or having an accent" (emphasis added)).)  However, "a plaintiff's mere subjective belief that [she] was discriminated against because of [her] race does not sustain a race discrimination claim." *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309, 321 (E.D.N.Y. 2014) (quotation marks omitted) (dismissing NYCHRL claim for lack of evidence supporting allegation that discrimination played a role in the plaintiff's termination), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).  Reach also argues that any criticism Richardson had of her was racially motivated because Chen and Striano thought Reach was good at her job.  (Opp. at 12, 16.)  But Richardson's issues with Reach were not that she was categorically bad at her job—instead, Richardson voiced concerns about Reach's communication skills and professionalism.  On these more granular issues, coworkers and supervisors could disagree based on their differing interactions with Reach.  Richardson's narrow criticism of Reach does not give rise to an inference of discrimination

merely because another coworker and a supervisor find Reach amenable to work with.  "The court does not sit 'as a super-personnel department,'" and "it does not matter whether the employer's decision was fair or correct . . . so long as the stated reason for the action was nondiscriminatory."  *Alhaj v. N.Y.C. Health & Hosps. Corp.*, 77 Misc. 3d 1063, 1070-71 (N.Y. Sup. Ct. 2022) (quoting *Baldwin v. Cablevision Sys. Corp.* 65 A.D.3d 961, 966 (1st Dep't 2009)).

Reach also relies on speculation that Richardson's "main goal" at HFMS was to advance equity for Black employees, based on her past involvement in Black employee affinity groups and her postings on LinkedIn.[7]  (Opp. at 17-18; Pl.'s Counterstatement ¶ 17.)  These arguments are baseless.  Even accepting as true that "Richardson is very much interested in black-centric and DEI issues" (Pl.'s Counterstatement ¶ 17), that fact has no bearing on whether Richardson harbors discriminatory intent against Asians.  Indeed, Reach cites only one specific post of Richardson's LinkedIn, which favorably referenced a book titled "White Women: Everything You Already Know About Your Own Racism and How to Do Better":  It makes no mention of Asians.  (ECF No. 78-7.)  Reach's evidence is nothing more than speculation.  *See S. Katzman Produce, Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) ("A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory.").  Where "the instances of alleged discrimination . . . are facially race-neutral, and plaintiff has not established an adequate basis

---

[7] Reach also relies on the fact that "the next seven hospital specialists who were hired into the Hospitals Group were Black and dark-skinned people." (Opp. at 17.)  But Reach's citations do not adequately support that allegation.  To the extent that the record citations provided to the Court are relevant, they consist only of Striano's incomplete recitation of the names of new hires—without indication of their race—and Reach's speculation, based on hearsay, about events that post-dated her departure.  (*See* Pl.'s Counterstatement ¶¶ 14, 41; ECF No. 78-5 at 55; ECF No. 78-1 at 91.)

permitting a trier of fact to infer that the alleged discriminatory conduct was motivated by plaintiff's race," summary judgment is appropriate. *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 269 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010).

Absent any other evidence of discrimination, Reach must establish "that comparators were treated better than [she] was" to survive summary judgment. *Bautista*, 642 F. Supp. 3d at 428 (quotation marks omitted). To establish discrimination through disparate treatment, "the plaintiff and the comparator must be 'similarly situated in all material respects.'" *Fenner v. News Corp.*, No. 09-CV-09832, 2013 WL 6244156, at *18 (S.D.N.Y. Dec. 2, 2013) (quoting *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000)). Reach argues that Lalak is a similarly situated comparator and that Richardson treated Lalak better because Lalak was perceived as Black. (Opp. at 13-14.) But Lalak joined HFMS eight years prior to Reach. (Defs.' Statement ¶ 12.) Indeed, when Reach first started at HFMS, she "shadow[ed] [] Lalak for one to two months" to "facilitate [her] understanding of [Healthfirst's] accounts," and Lalak "helped [her] answer a lot of questions."[8] (*Id.* ¶ 16; ECF No. 67-1 at 49, 55-56.) In light of these facts, "[t]here is no dispute that [Lalak] was senior to [Reach]," a fact that precludes the two from being similarly situated in all material respects. *Uttarwar*, 2024 WL 1251177, at *9 (citing *Forte v. Liquidnet Holdings, Inc.*, No. 14-CV-2185, 2015 WL 5820976, at *12 (S.D.N.Y. Sep. 30, 2015), *aff'd*, 675 F. App'x 21 (2d Cir. 2017)). Moreover, Lalak reported to Lawrence, not Richardson. (Defs.' Statement ¶¶ 18, 78.) Richardson therefore would not have overseen Lalak's work product or have been responsible for ensuring that Lalak did not fall behind, a dynamic that was crucial to Richardson's interactions with Reach. Lalak therefore cannot serve

---

[8] Because Reach asserts only a bare denial of this fact in Defendants' Rule 56.1 Statement (Pl.'s Resp. ¶ 16), and because Reach's own deposition supports this fact (ECF No. 67-1 at 49, 55-56), the Court treats the fact as undisputed.

16

as a similarly situated comparator. *Cf. Etienne*, 223 A.D.3d at 612-13 (holding that the plaintiff failed to show that she and her chosen comparator were similarly situated in all material respects because she failed to allege that, among other things, they reported to the same supervisors). The mere fact that Lalak and Reach had the same job title is not enough to establish Lalak as a similarly situated comparator. *Uttarwar*, 2024 WL 1251177, at *9.

Reach's case against Defendants lacks the "essential ingredient" of a discrimination claim under the NYSHRL and NYCHRL: "any nonspeculative proof" that Richardson treated her worse because of her protected status. *Dietrich v. City of New York*, No. 18-CV-7544, 2020 WL 4226591, at *15 (S.D.N.Y. July 23, 2020). Accordingly, the Court grants Defendants' motion for summary judgment as to Reach's discrimination and hostile work environment claims under the NYSHRL and the NYCHRL.

### B.    Retaliatory Harassment

#### 1.    Legal Standard

Retaliation claims under the NYSHRL and NYCHRL are also assessed under the *McDonnell Douglas* burden-shifting framework. *See Uttarwar*, 2024 WL 1251177, at *13. To establish a prima facie case of retaliation under the NYCHRL and the post-amendment NYSHRL, a plaintiff must show that (1) the plaintiff has engaged in protected activity, (2) the defendant had knowledge that the plaintiff participated in such activity, (3) "something happened that would be reasonably likely to deter a person from engaging in protected activity," and (4) there is a causal connection between the protected activity and the adverse action. *Id.* (quotation marks omitted) (noting that the "NYCHRL and post-amendment NYSHRL diverge from the federal standard with respect to the third element of a prima facie case of retaliation, as they do not require that the plaintiff prove any adverse employment action" (quotation marks omitted)). "Protected activity is action taken to protest or oppose statutorily prohibited discrimination."

*Martinez*, 814 F. Supp. 3d at 411 (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)) (other quotation marks omitted); *see also Villar*, 135 F. Supp. 3d at 139 ("[T]o prevail on a retaliation claim under the NYCHRL [and NYSHRL], the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." (quoting *Mihalik,* 715 F.3d at 112)).

### 2.    Analysis

Reach asserts two different retaliation claims under the NYSHRL and NYCHRL.  First, she asserts a retaliation claim against Richardson on the basis that, after Reach first complained about her to Momplaisir around the end of June 2022, Richardson's harassment of Reach increased.  (Opp. at 21-22.)  Reach also asserts a retaliation claim against HFMS on the basis that Momplaisir failed to respond to Reach's complaints about Richardson.  (*Id.* at 24-25.)

Reach fails to establish a prima facie case because she has not demonstrated that she engaged in a protected activity by opposing discrimination in the workplace.  It is undisputed that Reach made three complaints about Richardson to Momplaisir: first, she alerted Momplaisir to the fact that Richardson asked Chen to write a negative, midyear performance review (Pl.'s Resp. ¶ 43); then, after a one-on-one meeting with Richardson following the group meeting in which Reach declined Lalak's help, Reach again emailed Momplaisir and indicated that she felt stressed and overwhelmed, and that she would "not tolerate mental bullying, gas-lighting, and pushing [her] around like [she is] a child" (*id.* ¶¶ 53-54 (quotation marks omitted); and lastly, after Richardson and Reach's final meeting, which Reach recorded, Reach emailed the recording to Momplaisir (*id.* ¶ 65.)  Reach admits that she did not inform Momplaisir or anybody else at Defendants' organizations that she felt she was a victim of race or national origin discrimination until after her resignation.  (*Id.* ¶ 75.)

18

"Filing a grievance complaining of conduct other than unlawful discrimination . . . is simply not a protected activity subject to a retaliation claim under [NYSHRL or NYCHRL.]" *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 n.11 (N.Y. 2004). Courts have repeatedly held that general complaints about a work environment or intimidating behavior do not constitute protected activity. *See, e.g.*, *Marseille v. Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981, at *2 (2d Cir. Oct. 26, 2022) (summary order) (affirming the district court's holding that "an email asserting that it was inappropriate for [the defendant] to contact [the plaintiff] while she was on medical leave and referencing years of 'intimidation' . . . cannot reasonably be construed as an implicit complaint about unlawful conduct"); *Hribovsek v. United Cerebral Palsy of N.Y.C.*, 223 A.D.3d 618, 620 (1st Dep't 2024) (dismissing a retaliation claim where "plaintiff failed to demonstrate that she engaged in any protected activity because she never complained that she was discriminated against due to her race, national origin, or disability" (citation omitted)); *Ramirez v. Temin & Co., Inc.*, No. 20-CV-6258, 2021 WL 4392303, at *16 (S.D.N.Y. Sep. 24, 2021) ("[A]ccusing [an] employer of bullying and mistreatment [is] not a protected activity." (citing *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010))).

Viewing the evidence in the light most favorable to Reach, a reasonable factfinder could not conclude that she engaged in protected activity by complaining to Momplaisir about feeling stressed or overwhelmed, or by describing Richardson's behavior as bullying or hostile. "[W]here a plaintiff's complaint is vague or ambiguous and does not sufficiently articulate the nature of harassment, courts hold that a plaintiff has not engaged in a protected activity." *Soliman v. Deutsche Bank AG*, No. 03-CV-104, 2004 WL 1124689, at *13 (S.D.N.Y. May 20, 2004). Reach argues that she sufficiently alluded to workplace discrimination in her complaints

to Momplaisir because "it was obvious that racial issues could have been the motive behind []

Richardson's request to Chen to give a negative report about an employee that [] Richardson

barely knew and who was of a different race than Richardson." (Opp. at 21.) But for the reasons

discussed above, it was far from "obvious" that racial animus motivated Richardson's request for

a negative performance review. This is not a case where Momplaisir was already on notice of

discriminatory conduct, such that even an oblique reference to a hostile work environment could

be understood to oppose that discrimination. *Cf. Albunio v. City of New York*, 16 N.Y.3d 472,

479 (N.Y. 2011) (holding that the plaintiff opposed discrimination against gay prospective

employee where, after the defendant made discriminatory statements about the prospective

employee, the plaintiff "made clear her disapproval of that discrimination by communicating to

[the defendant], in substance, that she thought [his] treatment of [the prospective employee] was

wrong"). To the extent that Reach used the term "hostile work environment" in one of her

complaints to Momplaisir, the usage of "certain buzzwords" like "discrimination" and "disparate

treatment" is still insufficient to make Defendants aware that a complaint concerned racial or

national origin discrimination. *Uttarwar*, 2024 WL 1251177, at *15 (quotation marks omitted).

For the same reason, Reach cannot prevail on her retaliation claim against HFMS for

Momplaisir's failure to investigate her complaints against Richardson or Striano's complaints

about the work conditions. Reach relies on the fact that she and Striano, respectively Asian and

white, were complaining about managers of a different race than them. (Opp. at 24.) "The mere

fact" that the people "making the complaints" are of a certain race does "not convert an ordinary

complaint into a complaint of racial discrimination sufficient to put the employer on notice of

such discrimination." *Rommage v. MTA Long Island R.R.*, No. 08-CV-836, 2010 WL 4038754,

at *14 (E.D.N.Y. Sep. 30, 2010) (quotation marks omitted), *aff'd*, 452 F. App'x 70 (2d Cir.

20

2012). "Because the statements displayed no obvious reference to race . . . and plaintiff's [complaints] addressed harassment generally, but did not mention . . . race discrimination or harassment, there is no reason to impute to defendant any consciousness of an unstated race . . . premise underlying the harassing conduct described." *Id.*; *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 363 (S.D.N.Y. 2012) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." (quotation marks omitted)).

"Plaintiff's undisclosed belief that [she] was a victim of discrimination will not convert an ordinary employment complaint into a protected activity." *Fenner*, 2013 WL 6244156, at *25. Accordingly, the Court grants Defendants' motion for summary judgment as to Reach's retaliation claims under the NYSHRL and NYCHRL.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 66, to enter judgment in favor of Defendants, and to close the case.

SO ORDERED.

Dated: June 23, 2026
    New York, New York

_____
    J. PAUL OETKEN
    United States District Judge

21